UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**JAYSALEE LEBRON,**

      Plaintiff,

v.                                        Case No. 2:21-cv-650-SPC-NPM

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.

---

## REPORT AND RECOMMENDATION

Plaintiff Jaysalee Lebron seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 15), [1] and the parties filed a joint memorandum (Doc. 21). As discussed in this report, the decision of the Commissioner should be affirmed.

### I.    Eligibility for Disability Benefits and the Administration's Decision

#### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the corresponding page number.

twelve months. [2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.    Factual and procedural history

On August 12, 2019, Lebron applied for disability insurance benefits (Tr. 121, 135, 137, 171). And on August 28, 2019, she applied for supplemental security income. (Tr. 347). She asserted an onset date of August 5, 2019, and provided the following grounds for her applications: post-traumatic stress disorder (PTSD); bipolar disorder; anxiety; massive depression disorder; arthritis in knee; eating disorder; and emotional behavior disorder (Tr. 121, 137-138). The alleged onset date

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

was later amended to October 1, 2019. (Tr. 367). As of the amended onset date, Lebron was 31 years old with a GED. (Tr. 121, 137, 382). She previously worked as a sandwich maker, customer service worker, accounting clerk, and ticket agent. (Tr. 70-71, 382). By Lebron's account, she performs normal household activities, drives independently, and reads for pleasure "a lot." (*See* Tr. 82, 91-92, 398-400, 586, 650).

On behalf of the administration, a state agency [5] reviewed and denied Lebron's applications initially on October 8, 2019, and upon reconsideration on March 11, 2020. (Tr. 135-136, 171-172). At Lebron's request, Administrative Law Judge (ALJ) Ryan Johannes held a hearing on August 27, 2020. (Tr. 75-102, 226-227). A post-hearing consultive examination was ordered and performed. (Tr. 101-102, 647-654). Lebron then requested a supplemental hearing, which was held on February 8, 2021. (Tr. 60-74). On February 16, 2021, the ALJ issued a decision finding Lebron not disabled. (Tr. 7-28). Lebron's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). She then brought the matter to this court, and the case is ripe for judicial review.

### C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 416.903(a).

process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.
>
> *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore

for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found that while Lebron had worked part-time during the relevant time period, she had not engaged in substantial gainful activity. (Tr. 13). At step two, the ALJ characterized Lebron's severe impairments as PTSD, intermittent explosive disorder, bipolar I disorder, cannabis use disorder, and dextroscoliosis of the lumber spine. (*Id.*). At step three, the ALJ determined Lebron did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 14).

As a predicate to step four, the ALJ arrived at the following RFC:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ladders and scaffolds; occasionally stoop; occasional exposure to unprotected heights; able to understand, remember, and carry out simple, repetitive, reasoning level 1-2 tasks; no interaction with the general public; and only occasional interaction with coworkers and supervisors; in a routine work setting that has only occasional changes in the routine; and no work in an assembly line or conveyor belt.

(Tr. 16). Consequently, the ALJ found Lebron unable to perform any past relevant work. (Tr. 26). At step five, the ALJ found Lebron could perform other work that exists in significant numbers in the national economy. (*Id.*). In support, a vocational expert opined during the ALJ hearing that three occupations represent the kinds of jobs that an individual of Lebron's age, education, work experience, and RFC can perform:

- *Collator* (DOT# 208.685-010); light; SVP 2; with 46,000 positions in the national economy;

- *Housekeeper* (DOT# 323.687-014); light; SVP 2; with 220,000 positions in the national economy; and

- *Routing Clerk* (DOT# 222.687-022); light; SVP 2; with 133,000 positions in the national economy.

(Tr. 27).[6] Thus, for purposes of the Act, the ALJ found Lebron was not disabled

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

from October 1, 2019, the amended onset date, through February 16, 2021, the date of decision. (Tr. 27-28).

## II.    Analysis

Lebron's appeal presents the following questions for review:

1)  whether the ALJ erred when assessing opinion evidence; and

2)  whether the ALJ's step three determination is supported by substantial evidence.

### A.    Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers

to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B.    The ALJ properly assessed the opinion evidence

Lebron contends the ALJ erred when evaluating the opinions of two medical sources: Jeanne Jagodzinski, ARNP-P[7] and licensed psychologist Theresa Bazacos, Ph.D. (Doc. 21, pp. 23-26, 38-40).

For context, Dr. Bazacos evaluated Lebron on September 14, 2020, by video conference after the first hearing. This was Bazacos's only evaluation of Lebron, and she thereafter completed a form questionnaire known as a "mental medical source statement." (Tr. 101-102, 648-654). Bazacos's diagnostic impressions included PTSD, intermittent explosive disorder, and bipolar I disorder. She opined

---

[7] While the record is unclear as to Jagodzinski's qualifications—aside from her signature line bearing a reference to ARNP-P—she is a medical source. *See* 20 C.F.R. §§ 404.1502(d), 416.902(i). She also appears to be a board certified psychiatric mental health nurse practitioner (PMHNP-BC) (Tr. 427), which makes her an "acceptable medical source" within her licensed scope of practice. *See* 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7).

Lebron's mental health symptoms "appear to be moderately to severely impacting activities of daily living, vocational performance, and interpersonal interactions," and that Lebron was not recommended to manage financial decisions. (Tr. 651).

Bazacos opined Lebron was mildly limited in her abilities to understand, remember and carry out simple instructions. She opined Lebron was moderately limited in her abilities to understand and remember complex instructions and to interact appropriately with the public, supervisors, and co-workers. Finally, Bazacos opined Lebron was markedly limited in her abilities to carry out complex instructions, make judgments on complex work-related decisions, and respond appropriately to usual work situations and to changes in a routine work setting. Bazacos explained that Lebron's "affect is unstable and unpredictable resulting in deficits in her ability to listen and follow through with instructions." And she stated Lebron's "unstable mood, anger, and impulsive behaviors are likely to interfere with her ability to interact appropriately with others or respond appropriately to changes in routine work situations and settings." (Tr. 652-653).

As for psychiatric nurse practitioner Jagodzinski, Lebron treated with her for mental health symptoms. (Tr. 513-517).[8] Jagodzinski completed a mental medical source statement on November 1, 2019. (Tr. 590-592). In it, Jagodzinski opined that

---

[8] In a footnote, Lebron seems to erroneously claim that she visited with Jagodzinski on six occasions. (Doc. 21, p. 25 n.5) (citing Tr. 500-501, 477, 506). But Lebron cited to only three groups of Jagodzinski's records from November 30, 2018, May 14, 2020, and June 9, 2020.

Lebron was moderately limited in her abilities to understand, remember and carry out simple instructions and to make judgments for work-related decisions. She opined Lebron was markedly limited in her abilities to interact appropriately with co-workers, and to respond appropriately to usual work situations or changes in a routine work setting. Finally, Jagodzinski opined Lebron was extremely limited in her abilities to understand, remember and carry out complex instructions and to interact appropriately with the public and supervisors. (*Id.*).

Jagodzinski identified the following factors to support her limitations: low frustration tolerance, impulsive behavior, history of psychosis, and paranoid thoughts. She stated Lebron "struggles with memory, concentration, focus, low frustration tolerance, [and] limited ability to complete tasks." She explained Lebron had "difficulty with [mood] stabilization and control of anger, impulsive behavior. These symptoms [increase] with increased stimuli." And she also wrote: "judgment is inconsistent due to mood instability. History of aggressive response when stressed." (*Id.*).

For disability cases filed on or after March 27, 2017—such as this one—the term "medical opinion" is no longer defined to include a diagnosis, prognosis, or judgment about the nature and severity of an impairment. Rather, it refers only to statements about what the claimant can still do despite any impairment(s), and whether there are any limitations in the claimant's abilities to perform the various

demands of work or adapt to work-related conditions. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Furthermore, medical opinions related to claims filed on or after March 27, 2017, are subject to an assessment about their persuasiveness rather than their weight. *See* 20 C.F.R. §§ 404.1520c, 404.1527(c), 416.920c, 416.927(c).

Because a disability finding hinges on functional limitations and not just the existence of impairments, the ALJ needed to assess the opinions about Lebron's abilities despite, and limitations because of, her impairments. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). These opinions are assessed for their persuasiveness based on the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). The providers' judgments about the nature and severity of Lebron's impairments, medical history, clinical findings, diagnosis, treatment, or prognosis merely constitute "other medical evidence" in the record. 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

The ALJ found the opinions of Dr. Bazacos partially persuasive. The ALJ further broke down which opinions were persuasive and unpersuasive. Contrary to

Lebron's assertions, the ALJ's analysis follows the current regulations. The ALJ found persuasive:

> the portion of [Bazacos's] opinion in which she opined that [Lebron] would have a mild limitation in understanding and remembering simple instructions and carrying out simple instructions, with a moderate limitation in understanding and remembering complex instructions, interacting with the public, supervisors, or coworkers, and a marked limitation in carrying out complex instructions and with the ability to make judgments on complex work-related decisions, and responding appropriately the usual work situations and to changes in a work setting.

(Tr. 25).

And the ALJ found unpersuasive Bazacos's opinions that Lebron's "mental health symptoms based on report and clinical observations appear to be moderately to severely impacting activities of daily living, vocational performance, and interpersonal interactions." (Tr. 25). The ALJ explained: "This portion of her opinion is not phrased in vocational relevant terms and is therefor of little inherent value." (Tr. 25). The ALJ also did not find persuasive the opinion that Lebron was not recommended to manage financial decisions as it is "generally unsupported by [Bazacos's] own findings that [Lebron] has intact memory and ability to perform calculations." (Tr. 25, 650-651).

Other than these exceptions, the ALJ found Bazacos's opinion was generally consistent with the objective evidence of record. The ALJ explained, for example, "her opinion is generally supported by her own objective examination in which she found that [Lebron] was essentially normal except for the above findings that are

generally compatible with [Lebron's] ability [to] perform work pursuant to the [RFC] finding above." (Tr. 25). The opinions were also "generally consistent with the essentially normal objective psychiatric-related findings by [the consultative examiner]."

The ALJ also noted the opinion was consistent with the general objective findings by, and treatment notes from, Jagodzinski since November 2019. (*Id.*). As the ALJ observed, Jagodzinski had made findings of normal eye contact, speech, memory, and fair judgment and insight. (Tr. 19-20, 594, 600, 612, 618, 633-634, 639-640, 657-658, 663-664). Finally, the persuasive portions of the opinion were "generally otherwise consistent with [Lebron's] high functioning of daily living that include repeatedly looking for employment, performing at least some volunteer work, going four wheeling, driving, engaging in self-improvement, and being generally independent with self-care." (Tr. 26).

Lebron takes issue with this because although the ALJ found persuasive Bazacos's opinions about having a marked limitation in certain areas, the ALJ did not mirror them in the RFC. (Doc. 21, p. 39). But finding an opinion persuasive does not mean it is controlling. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). And the regulations do not require ALJs to adopt into an

RFC every part of an opinion they otherwise find persuasive. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Freyhagen v. Comm'r of Soc. Sec.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, *8 (M.D. Fla. Sept. 26, 2019).

Rather, the assessment of a claimant's RFC is within the exclusive province of the ALJ. *See* 20 C.F.R. §§ 404.1546(c) 416.946(c); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive"). So an ALJ does not impermissibly assume the role of a doctor by viewing the record evidence as a whole and making an RFC determination. *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("[T]he ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC.").

Lebron also argues the ALJ mischaracterized Bazacos's findings as being "essentially normal" except for certain findings such as having an anxious mood and sad affect. (Tr. 22, 25); (Doc. 21, p. 39). This contention is also without merit. The ALJ noted there were exceptions to what was otherwise "essentially normal," and it was not error to summarize Bazacos's findings this way. Bazacos's mental status evaluation states, for instance, that Lebron was alert and oriented to person, place, time, and situation; demonstrated good attention and concentration; and displayed

adequate social skills. (Tr. 650-651). It is not reversible error for an ALJ to characterize unremarkable findings as "essentially normal."

As for Ms. Jagodzinski's opinions, Lebron argues the ALJ failed to support his assessment of her opinion with any analysis or citation to evidence. (Doc. 21, p. 38); (Tr. 24). But the ALJ summarized Jagodzinski's treatment notes in extensive detail over several pages of his decision. (Tr. 18-24). And these extensive summaries repeatedly show unremarkable findings, such as having no overt cognitive deficits, fair judgment, fair insight, coherent thought and perception, logical, goal-directed, no suicidal or homicidal ideation, oriented, cooperative, and progress toward symptom control. (Tr. 18-24). The ALJ's detailed consideration of Jagodzinski's notes and the medical and other evidence of record shows why he found Jagodzinski's extreme limitations unpersuasive, and any failure to use the words "supportability" and "consistency" in talismanic fashion in this analysis was harmless. *See Thaxton v. Kijakazi*, No. 1:20-cv-00616-SRW, 2022 WL 983156, *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record."). Thus, remand would be a useless endeavor. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (stating courts should decline "to remand for express findings when doing so would be a wasteful corrective exercise in light of the evidence of

record and when no further findings could be made that would alter the ALJ's decision") (internal quotation marks omitted).

### C. Substantial evidence supports the ALJ's step 3 determination

Lebron argues the ALJ should have found that her mental impairments meet listings 12.04, 12.06, 12.08, and 12.15. (Doc. 21, p. 21). Lebron heavily relies on the opinion evidence of Jagodzinski and Bazacos, but as discussed above, substantial evidence supports the ALJ's conclusion that these opinions were less than fully persuasive.

Moreover, Lebron makes no argument about listing 12.15 and has therefore abandoned it. *See Access Now, Inc. v. Sw. Airlines*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."). And she perfunctorily claims listing 12.04(A) and 12.08(A) are met without providing any analysis as to why. (Doc. 21, pp. 21-23). Thus, Lebron has forfeited any challenge concerning these listings. *See, e.g.*, *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (claimant forfeited argument because he neither developed it nor provided authority in support).

The only listing for which Lebron has supplied a developed argument is listing 12.06. Lebron has the burden of proving that an impairment meets or medically equals a listed impairment. *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 741 (11th Cir. 2008) (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)). For an impairment to meet a listing, it must meet *all* of the criteria. *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 840 (11th Cir. 2019) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). If an impairment meets only some of the criteria, it will not qualify, no matter the severity of the impairment. *Id.*

Listing 12.06 disorders "are characterized by excessive anxiety, worry, apprehension, and fear, or by avoidance of feelings, thoughts, activities, objects, places, or people." 20 C.F.R. § 404, Subpt. P, App. 1, listing 12.06. To meet listing 12.06, a claimant must meet the criteria of paragraphs A and B or paragraphs A and C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Paragraph A lists the medical symptoms that must be present in the medical evidence, and paragraph B requires extreme limitation of one, or marked limitation of two, of the four domains of mental functioning. *Id.* Paragraph C requires a claimant to have a medically documented history of the existence of a disorder for over two years. *Id.*[9] In addition, paragraph

---

[9] Paragraph A of listing 12.06 can be satisfied by medical documentation of the requirements of subparagraphs 1, 2, or 3. Subparagraph 1 refers to anxiety disorder, subparagraph 2 refers to panic disorders or agoraphobia, and subparagraph 3 refers to obsessive-compulsive disorder. Lebron's argument appears to pertain solely to anxiety. And since Lebron does not argue that she met the criteria of 12.06(A)(2), 12.06(A)(3), or 12.06(C), she has forfeited any argument as to whether she satisfied those criteria. *See Access Now*, 385 F.3d at 1330.

C requires evidence of both (a) "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [a claimant's] mental disorder"; and (b) marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." *Id.*

Lebron recites that anxiety disorder under listing 12.06(A) (referring to paragraph A criteria) can be satisfied by documenting three or more of the following six symptoms: restlessness; easily fatigued; difficulty concentrating; irritability; muscle tension; or sleep disturbance. (Doc. 21, p. 22) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06(A)). Without elaborating, Lebron claims the medical records document two of the six symptoms, including irritability and trouble concentrating. (*Id.*) (citing Tr. 477 (1-10-2017 treatment note of Daniel Gessesse, M.D.), 479 (11-30-2018 treatment note by Jagodzinski), 500-501 (7-18-2014 treatment note by Enrique Villarreal, M.D.), 591 (Jagodzinski's 11-1-2019 medical source statement), 624 (6-9-2020 treatment note by Jagodzinski), 633 and 635 (5-15-2020 treatment note by Jagodzinski)). Thus, this medical-record-citation effort falls short.

Even if the medical-record citations were accepted as arguments (which appear insufficient), the records from 2014, 2017, and 2018 are from outside the relevant period (beginning October 1, 2019, through February 16, 2021). Thus, that

evidence does not show that Lebron met the listing criteria during the relevant period. And mere citations to a handful of records within the relevant time period does not satisfy her burden of showing she met listing 12.06 for any consecutive twelve-month period.

In arguing that she met the paragraph B criteria, Lebron relies on the opinions of Bazacos and Jagodzinski. But as discussed earlier, the ALJ found these opinions less than fully persuasive. The ALJ found Lebron had no more than a "moderate" limitation in any paragraph B area, and the ALJ supported his findings with specific citations to the record. (Tr. 14-16; *see also* Tr. 18-25). For instance, as it relates to the irritability symptoms, the ALJ found Lebron had a moderate limitation in the paragraph B area of interacting with others. He explained:

> The medical evidence of record shows that the claimant generally interacted normally with all treating and examining practitioners. They often noted the claimant was pleasant, cooperative, and in no distress. Treating and examining practitioners did not observe the claimant to have serious deficiencies in eye contact, speech, or conversation. The claimant has no problems going out in public and can go out alone. The claimant generally occasionally complained of serious problems with interpersonal interaction to treating or examining practitioners. The claimant reported socializing with family and friends both in and outside of the home. The claimant lived with family without serious problems. She generally reported good relationships with family and friends. Dr. Bazacos found that the claimant had intact adequate social skills and unremarkable speech despite diagnosing the claimant with intermittent explosive disorder, which the undersigned finds warrants a moderate limitation in this area. Ms. Jagodzinski generally found that the claimant had fair judgment, good eye contact, and typically essentially normal speech, although she found that the claimant, at least occasionally, reported some difficulties with social interactions, as below. (Exhibits B8F/1-6; B9F/1-11; B10F/2-20; B11F/2-5; B12F/2-13; Hearing Testimony).

- 19 -

(Tr. 15). So, while the ALJ did not find the opinions of Bazacos or Jagodzinski fully persuasive, he nevertheless considered and discussed their objective examination findings when discussing the very symptoms Lebron claims makes her disabled.

At bottom, the ALJ considered the listings, including 12.06, and supported his findings that Lebron did not meet or medically equal a listing with citations to the record. While Lebron has essentially forfeited this entire issue by failing to substantiate most of her arguments, any arguments not forfeited still lack merit. The court "'may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004)). That Lebron identifies other evidence in the record which may support a different finding (*i.e.*, greater limitations arising from mental impairments) does not mean that the ALJ's decision is unsupported by substantial evidence. *See Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) ("[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."). Thus, the ALJ did not omit any step-three error.

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard.

Accordingly, the decision of the Commissioner should be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court should be directed to enter judgment in Defendant's favor.

Respectfully recommended on August 8, 2022.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**